UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO.: ) ) ) |
| JUNG JOO PARK, individually and as trustee of the Que Te Park Declaration of Trust and as the De Facto representative of the estate of Que Te Park; JOHN DOE, as personal representative of the Estate of QUE TE PARK; CHARLES C. PARK, individually, and as successor co-trustee of the Que Te Park Declaration of Trust; JAMES PARK, individually and as successor co-trustee of the Que Te Park Declaration of Trust; Nina Park, individually, and as successor co-trustee of the Que Te Park Declaration of Trust, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

The plaintiff United States of America (the "United States"), with the authorization of the Secretary of the Treasury and at the direction of the Attorney General of the United States, brings this action under 31 U.S.C. § 3711(g)(4)(C) to collect outstanding civil penalties, along with associated late-payment penalties and interest assessed against Que Te Park, from the defendants John Doe, as personal representative of the Estate of Que Te Park ("Mr. Park"); Jung Joo Park ("Mrs. Park"), individually and as Trustee of the Que Te Park Declaration of Trust ("the Trust") as well as de facto representative of the estate of Que Te Park; Charles C. Park ("Charles"), individually and as Successor Co-Trustee of the Trust; James Park ("James"), individually, and as Successor Co-Trustee of the Trust; and Nina Park ("Nina" and together with

1

Charles and James, the "Park Children"), individually, and as Successor Co-Trustee of the Trust. The civil penalties were assessed on account of Mr. Park's willful failure to report his financial interest in and signature authority over a foreign bank or other financial account as required by 31 U.S.C. § 5314 and its implementing regulations. In support of its complaint, the United States alleges as follows:

### Jurisdiction, Venue and Parties

1. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355(a).

2. A substantial part of the events or omissions giving rise to the claims at issue occurred at 510 Alexander Ct., Inverness, Illinois, 60010 (the "Property"), the address that Mr. Park used to file or amend his previous years' tax returns and the report of Foreign Bank and Financial Accounts ("FBAR"). Additionally, the Property was the last known address for Mr. Park in the United States.

3. The District of Illinois is a proper venue for this action under 28 U.S.C. § 1391(b)(2) and § 1391(c)(1), (2) & (3).

4. Mr. Park was an individual who died in 2012.

5. At all times relevant to this action, the defendant Mr. Park resided in Cook County, Illinois, within the jurisdiction of this Court.

6. Upon information and belief, no personal representative or administrator has been appointed to act on behalf of Mr. Park's estate.[1]

7. Upon information and belief, the Trust was settled and notarized in the State of Illinois, County of DuPage.

---

[1] The United States, as a creditor, anticipates filing a Petition for Letter of Administration to have a representative appointed for Mr. Park's estate as permitted by Illinois law.

8. Defendant Jung Joo Park is the surviving spouse of Que Te Park and became the Trustee of the Trust upon Mr. Park's death. She is being sued as the trustee of the Trust which was established to hold Mr. Park's assets and which is responsible for paying Mr. Park's debts, as well as as the de facto representative of the estate of Que Te Park, which owes the debt to the United States, as well as individually, to the extent that assets remaining in the Trust are insufficient to fully pay the claim of the United States, on account of her receipt of assets from the Trust as well as pursuant to 31 U.S.C. § 3713 and for breach of fiduciary duty to the extent assets in the Trust were distributed by her to the harm of the United States. She is also being sued to the extent she received assets from Que Te Park that should have been used to pay the debt to the United States.

9. Defendant Charles C. Park is the son of Que Te Park and the natural object of his bounty and as such may be a recipient of property of the Trust as well as of property directly from Que Te Park that is subject to the claim of the United States or was transferred to him as a fraudulent conveyance. He is a Successor Co-Trustee of the Trust and is being sued in that capacity in the event that Jung Joo Park has resigned as trustee.

10. Defendant James Park is the son of Que Te Park and the natural object of his bounty and as such may be a recipient of property of the Trust as well as of property directly from Que Te Park that is subject to the claim of the United States or was transferred to him as a fraudulent conveyance. He is a Successor Co-Trustee of the Trust and is being sued in that capacity in the event that Jung Joo Park has resigned as trustee.

11. Defendant Nina Park is the daughter of Que Te Park and the natural object of his bounty and as such may be a recipient of the property of the Trust as well as of property directly from Que Te Park that is subject to the claim of the United States or was transferred to her as a

fraudulent conveyance. She is a Successor Co-Trustee of the Trust and is being sued in that capacity in the event that Jung Joo Park has resigned as trustee.

*Mr. Park's Past Fraudulent Conduct*

12. Mr. Park was a United States citizen who died in South Korea on or about July 12, 2012, at the age of sixty-six.

13. Mr. Park is survived by his wife, Jung Joo Park who is also a U.S. citizen. She is approximately sixty-two years old and currently lives in South Korea. Mr. Park is also survived by their three adult children: (a) Mr. Charles Chang Park residing in Cook County, Illinois; (b) Mr. James Jun Park residing in Duluth, Georgia; and (c) Ms. Nina Park residing at Brooklyn, New York.

14. Mr. Park had a college education and operated corporations[2] selling Q-Ray bracelets from January 1, 1996 to 2007. From September 2000 through June 2003, the Q-Ray bracelets, an ionized piece of jewelry purported to affect the "chi" of the wearer in order to help relieve pain and arthritis, was advertised on cable TV infomercials, on websites, and at trade shows. Retail prices for bracelets ranged from $49.95 to $249.95, mark-ups of over 650 percent in some cases. During the time the infomercials ran, net sales to consumers were $87 million.

15. In May 2003, the federal Trade Commission ("FTC") filed a federal suit against Mr. Park and his corporations[3] for making false and misleading advertising claims and deceptively advertising their refund policy, in violation of sections 5 and 12 of the Federal Trade Commission Act. The case was in filed in this jurisdiction, styled as *FTC et al v. Que Te Park, et al*, Case No. 03-cv- C3578 (Hon. Morton Denlow (Retired)).

---

[2] These companies are QT Inc., Q-Ray Company, and Bio- Metal Inc.

[3] Mrs. Park was also a party to this suit, but the FTC later dropped its claims against her.

16. On November 11, 2006, Judge Denlow enjoined the defendants in Case No. 03-cv-3578 from promoting the Q- Ray bracelet, and required them to disgorge some $16 million (plus interest) for the FTC to distribute to consumers who had been defrauded. To this end, on November 13, 2006, the judge ordered Mr. Park and his companies to repatriate and relinquish over $25 million worth of assets. 03-cv-03578, Doc. No. 211-2.

17. On January 22, 2007, Judge Denlow entered judgment against Mr. Park and his companies jointly and severally, requiring them to disgorge a minimum of $15.9 million plus pre-judgment interest calculated pursuant to the formula provided in the Final Judgment Order, and found [Mr. Park] jointly and severally liable and required him to "disgorge a minimum of $8,581,915 plus pre-judgment interest. . . ." 03-cv-03578, Doc. No. 246.[4]

18. Despite having beneficial interests in foreign accounts worth more than $7 million which he did not report, Mr. Park filed for bankruptcy protection in the U.S. Bankruptcy Court for the Northern District of Illinois on February 23, 2007, 07-03217. Mr. Park was denied a discharge on March 4, 2009. *See* 07-03217, Doc. No. 309.

19. On May 6, 2011, the Federal Trade Commission issued a press release stating that it returned more than $11.8 million to people who purchased the Q-Ray bracelet as a result of this scam.

20. Upon information and belief, Mr. Park died in Dae Jeon, South Korea on July 12, 2012.

### *The Revocable Trust*

21. Upon information and belief, Mr. Park's assets were placed into a revocable trust named the Que Te Park Declaration of Trust, which by its terms became irrevocable upon Mr.

---

[4] On January 3, 2008, the Seventh Circuit affirmed the district court's judgment.

Park's death. *See* First Amendment and Restatement of the Que Te Park Declaration of Trust, dated January 15, 2007, attached hereto as **Exhibit 1**.

22. Que Te Park was the grantor of the Trust.

23. Que Te Park was the original trustee of the Trust.

24. The Trust required that Mr. Park be paid from the Trust Estate in convenient installments, and entitled Mr. Park to receive amounts from the trust principal at his request and to obtain all of the assets of the trust by revoking it.

25. The Trust identifies Jung Joo Park, Mr. Park's surviving spouse, as the Successor Trustee, upon his death and in the event she is unwilling and unable to act as Successor Trustee, the Trust names his children, Charles Park, James Park and Nina Park as Successor Co-Trustees.

26. The Trust Agreement provides that upon Mr. Park's death:

> THIRD: If my wife survives me, the trustee as of my death shall set aside out of the trust estate as a separate trust for her benefit (undiminished to the extent possible by any estate or inheritance taxes or other charges) a fraction of the trust property of which (i) the numerator is the smallest amount which, if allowed as a federal estate tax marital deduction, would result in the least possible federal estate tax payable by reason of my death, and (ii) the denominator is the federal estate tax value of the assets included in my gross estate which became (or the proceeds, investments or reinvestments of which became) trust property. In determining the amount of the numerator the trustee shall consider the credit for state death taxes only to the extent those taxes are not thereby incurred or increased and shall assume that none of the Family Trust hereinafter established qualifies for a federal estate tax deduction.
>
> \* \* \*
>
> The Trust shall be designated the "Marital Trust" and shall be held and disposed of as follows:
>
> SECTION 1: Commencing with my death, the Trustee shall pay the income from the Marital Trust in convenient installments, at least quarterly, to my wife during her lifetime.
>
> \* \* \*
>
> My wife may at any time or times during her lifetime by instrument in writing delivered to the Trustee, appoint any part or all of the principal to or in trust for

any one or more of my descendants and their respective spouses and charitable, scientific or educational purposes as she directs, and the Trustee shall reimburse her from the remaining principal for the amount of any gift taxes incurred thereby

(the "Marital Transfer"). *See* Trust Agreement, ARTICLE Third.

27. The Trust Agreement further provides:

FOURTH: The Trustee as of my death shall set aside the balance of the Trust Estate as a separate trust. The Trust shall be designated the "Family Trust" and shall be held and disposed of as follows:

SECTION 1: If my wife survives me, then commencing with my death, the Trustee shall pay the income from the Family Trust in convenient installments, at least quarterly to her during her lifetime.

The Trustee may also pay to my wife such sums from principal as the Trustee deems necessary or advisable from time to time for her health and maintenance in reasonable comfort, considering her income from all sources known to the Trustee, but shall make no invasion of the Family Trust for my wife so long as any readily marketable assets remain in the Marital Trust.

(the "Family Transfer"). *See* Trust Agreement, Article Fourth, Section I.

28. The Trust Agreement also required that the trustee pay all claims allowable against the Estate upon the death of Que Te Park.

29. While Mr. Park held beneficial interests in assets titled in the name of other persons or entities, and may have owned other property subject to probate, on information and belief no probate estate has been opened and the disposition of those beneficial interests is unknown to the United States. The beneficial interests and other assets which Mr. Park fraudulently transferred during his lifetime or transferred upon death are subject to the claim of the United States.

*Foreign Bank Accounts and Reporting*

30. Section 5314 of Title 31 requires taxpayers with an interest in, or signature or other authority over, foreign financial accounts whose aggregate value exceeded $10,000 at any

7

time during a given year to report their account(s) by filing a form reporting the foreign account, TD F 90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR").

31. The Internal Revenue Service (the "IRS") uses a John Doe summons to obtain information about possible tax fraud by people whose identities are unknown. On June 30, 2008, the United States Justice Department filed papers seeking an order from a federal court in Miami, Fla., authorizing the IRS to use a John Doe summons to request information from Zurich, Switzerland-based UBS AG ("UBS") about U.S. taxpayers who may be using Swiss bank accounts to evade federal income taxes.

32. Following service of a John Doe summons on July 21, 2008, the IRS received from UBS statements and banking information for tax years 2003 through May 14, 2007 for an account that Mr. Park was the beneficial owner of. Mr. Park closed that account on May 14, 2007, and the funds were then transferred to another UBS account held in the name of Liechtenstein entity for which Mr. Park was also the beneficial owner.

33. On Schedules B of their joint Forms 1040 for 2004, 2005, and 2006, Mr. and Mrs. Park checked "yes" to Question 7a, indicating that they had an interest in or a signature or other authority over a financial account in a foreign country, and stated on 7B that the foreign account was in China. Upon information and belief, at the time they checked "yes," they knew of the existence of additional foreign accounts in Switzerland.

34. For the 2007 calendar year, Mr. Park timely filed a FBAR form, but only disclosed three out of ten foreign bank accounts held during the 2007 calendar year, willfully withholding the information on the other seven accounts. As a result of publicity related to the fact that Swiss banks were turning over to the United States government the names of American citizens with beneficial interests in Swiss bank accounts pursuant to the John Doe summons, Mr.

Park thereafter filed three amended FBAR forms, ultimately disclosing the additional foreign bank accounts.

35. On his separately filed 2007 Form 1040, Mr. Park reported only interest income of $9,900 earned on HSBC bank account in China. On June 10, 2010, he filed an amended 2007 Form 1040X, reporting total income from foreign bank accounts as follows: (a) interest income of $63,178 ($53, 278 of additional interest income); (b) dividends of $2,208 and (c) capital gains of $173,215.

36. For the 2008 calendar year, Mr. Park did not timely file any FBAR forms, willfully failing to report his beneficial interest in all of his foreign bank accounts. By early 2010 it had become apparent that as a result of the John Doe summons the United States was receiving information from Swiss banks on U.S. citizens with foreign accounts, and tax advisors were advising that the way for a citizen who had not properly reported foreign financial accounts to likely avoid criminal prosecution was to fess up before he was contacted by the IRS. On June 10, 2010, Mr. Park filed a delinquent FBAR form for the 2008 calendar year, which disclosed the ten foreign accounts and account balances underlying the FBAR assessment, shown below:

| **Bank** | **Country** | **Account Number** | **Highest Balance** | **Willful Penalty** |
| --- | --- | --- | --- | --- |
| UBS | Switzerland | XXXXXXXX4601 | $3,076,424 | $1,538, 212.00 |
| Zuercher Kantonal Bank | Switzerland | XXXXXXXX9762 | $189,757 | $94,878.50 |
| Zuercher Kantonal Bank | Switzerland | XXXXXXXX6255 | $1207,282 | $603,641.00 |
| Zuercher Kantonal Bank | Switzerland | XXXXXXXX6247 | $528, 904 | $264, 452.00 |
| Zuercher Kantonal Bank | Switzerland | XXXXXXX1800 | $46, 992 | $23, 496.00 |

9

| Woori | China | XXXXXXX0159 | $387, 600 | $193,800.00 |
| ShInhan | Korea | XXXXXXXX2596 | $599,900 | $299, 950.00 |
| ShInhan | Korea | XXXXXXX5505 | $489,000 | $244,500.00 |
| ShInhan | Korea | XXXXXXXX3393 | $193,000 | $96, 500.00 |
| HSBC | China | XXXXXXXX9406 | $300,000 | $150,000.00 |
| | | | $7,018,859.00 | $3,509, 429.50 |

37. Similar to Mr. Park's reporting for calendar year 2007, he filed the delinquent 2008 FBAR form, referenced in paragraph 36, above, by filing a Form 1040X amended return and delinquent FBAR form disclosing previously undisclosed foreign bank accounts. Likewise, Mr. Park reported on his originally filed 2008 income tax return $6,900 of interest income from his HSBS Bank account in China, and no dividends or capital gains.

38. On June 10, 2010, he filed a 2008 Form 1040X reporting total income from foreign bank accounts as follows: (a) interest income of $35,287 ($28,387 of additional interest income); and (b) capital gains of $182,932.

## Count I: Reduce FBAR Civil Penalties to Judgment

39. The United States incorporates paragraphs 1 through 38 above.

40. Section 5314 of Title 31 of the U.S. Code and the implementing regulations promulgated thereunder, requires a person to keep records and file reports when that person maintains a relation with a foreign financial agency. Such reports must be filed with the IRS. Section 5321(a)(5) of Title 31 provides for the imposition of civil penalties for willful failure to comply with the reporting requirements of section 5314.

41. During 2008, Mr. Park had a financial interest in and signature authority over each of the 10 foreign bank/ financial accounts referenced in paragraph 36.

42. The value of the each of the 10 accounts exceeded $10,000.00 at all times during 2008.

43. Mr. Park failed to timely file an FBAR for 2008 by June 30, 2009, reporting his financial interest in and signature authority over the 10 accounts referenced in paragraph 36.

44. Mr. Park's obligation to timely file an FBAR by June 30, 2009, and the United States' claim against him arose prior to his death on July 12, 2012.

45. Mr. Park's failure to timely file an FBAR for the 2008 tax year was willful.

46. The IRS assessed the FBAR penalty for the 2008 calendar year on November 21, 2014.

47. The 2008 FBAR penalty assessed against Mr. Park remains unpaid, and the total balance due on the penalties, along with statutory additions and interest, including late-payment penalties assessed pursuant to 31 U.S.C. § 3717(e)(2), is $3,979,212.31 as of November 18, 2016.

**Count II: Liability of the Que Te Park Trust Recoverable Under Illinois Common Law**

48. The United States incorporates paragraphs 1 through 47, above.

49. Under Illinois common law principles, penalties assessed pursuant to 31 U.S.C. 5321(a)(5) are recoverable from the Trust.

50. The United States' claim against Que Te Park arose on June 30, 2009.

51. As both the settlor and trustee of the Trust, Que Te Park retained the right to receive and use all income of the Trust during his life and enjoyed the benefits of regular distributions from the property of the Trust.

52. The Trust became irrevocable upon the death of Que Te Park.

53. The Trust required that all claims against the Estate of Que Te Park be satisfied from the Trust property.

54. The United States is entitled to recover the balance of penalties assessed against Mr. Park pursuant to 5321(a)(5), which amount is $3,979,212.31 as of November 18, 2016, from the Trust property in the hands of the trustee of the Trust, and to the extent there are not sufficient assets in the Trust to satisfy the United States' claim, from any recipient of assets of the Trust.

**Count III: Fiduciary Liability of Jung Joo Park Under 31 U.S.C. § 3713 and Illinois law.**

55. The United States incorporates paragraphs 1 through 54, above.

56. Pursuant to 31 U.S.C. § 3713, Jung Joo Park, as the Trustee of the Trust and the defacto representative of the estate of Que Te Park, was required to first pay the claims of the United States against the estate which includes the penalties assessed against Mr. Park, which amount totaled $3,979,212.31 as of November 18, 2016.

57. Defendant Jung Joo Park, admitted by virtue of signing the 2004, 2005, 2006, and 2007 tax returns, to having knowledge of the foreign bank accounts, and knew or should have known of the possibility of a penalty assessment against Mr. Park for his failure to file an FBAR report for the 2008 tax year.

58. Despite having such notice, Jung Joo Park distributed the Trust property to persons other than the United States in violation of 31 U.S.C. § 3713(a).

59. In addition, as Trustee of the Trust, Jung Joo Park had a fiduciary obligation to pay the claim of the United States.

60. To the extent the Trust assets are not sufficient to satisfy the claim of the United States because of distributions made by Jung Joo Park as trustee of the Trust, Defendant Jung Joo Park is personally liable to the United States under 31 U.S.C. § 3713(a), as well as as a fiduciary, to the extent of any distributions of trust assets after she became trustee, less any amounts recovered from the transferees.

**Count IV: Set Aside Fraudulent Transfers**

61. The United States incorporates paragraphs 1 through 60 above.

62. Que Te Park purportedly transferred his interest in the Trust to the Marital Trust, of which defendant Jung Joo Park is a beneficiary and the successor trustee of the Trust (the Marital Transfer).

63. Que Te Park purportedly transferred property of the Trust to the Family Trust of which defendant Jung Joo Park is a trustee, and of which Jung Joo Park and the Park Children are beneficiaries (the Family Transfer).

64. Upon information and belief, Defendant Jung Joo Park transferred property of the Trust to the Defendant Charles Park.

65. Upon information and belief, Defendant Jung Joo Park transferred property of the Trust to the Defendant James Park.

66. Upon information and belief, Defendant Jung Joo Park transferred property of the Trust to the Defendant Nina Park.

67. That the Park Children received the property of the Trust as subsequent transferees (the "Subsequent Transfers").

68. The United States' claims herein arose out of Que Te Park's willful failure to timely file an FBAR for 2008 by the June 30, 2009 filing deadline as required by 31 U.S.C. § 5314(a).

69. At the time of the purported Marital Transfer and the Family Transfer described in paragraphs 62, and 63 above, Que Te Park was in violation of 31 U.S.C. § 5314(a), which gave rise to the United States' claim against him for failure to timely file and report his Foreign Bank and Financial Accounts.

70. At the time of the purported Subsequent Transfers by Jung Joo Park to the Park Children as described in paragraphs 64, 65, 66, and 67 above, Que Te Park was in violation of 31 U.S.C. § 5314(a), which gave rise to the United States' claim against him for failure timely file and report his Foreign Bank and Financial Accounts.

71. The purported Transfers and Subsequent Transfers, described in paragraphs 62, 63, 64, 65, 66, and 67 above, were made without receiving reasonably equivalent value in exchange, and were made while Que Te Park or the Trust was insolvent. The purported transfers were therefore fraudulent as to creditors of Que Te Park, including the United States, and void as to the United States.

**Count V: Other Assets**

72. The United States incorporates paragraphs 1 through 71.

73. Mr. Park held beneficial interests in assets titled in the name of nominees. To the extent that those beneficial interests were conveyed to his surviving spouse or his children before his death, at a time when he was insolvent, the surviving spouse and the Park Children are liable to the United States as recipients of fraudulently conveyed assets. To the extent the beneficial interest passed to his surviving spouse or the Park Children as a result of Que Te Park's death,

the surviving spouse and Park Children are liable to the United States in the amount of the value of the assets received or the unpaid portion of the United States' claim, whichever is less.

**Count VI – Request for an Accounting of Property Transferred into and out of the Trust after June 30, 2009 and of the Disposition of Beneficial and other interests owned by Que Te Park from June 30, 2008, the date he reported owning Beneficial Interests in Foreign Accounts, to the date of his Death.**

74. The United States incorporates paragraphs 1 through 73.

75. That Defendant Jung Joo Park breached her fiduciary duty as the defacto representative of the Estate of Que Te Park, and as the Successor Trustee of the Trust by failing to pay the amounts due the United States which liability arose by virtue of his violation of 31 U.S.C. § 5314(a).

76. The United States is entitled to receive and requests an accounting of all Trust property transferred to the Trust or distributed by the Trust from June 30, 2009, the date of Que Te Park's failure to file information for 2008, to the present.

77. The United States further is entitled to receive and requests an accounting from Jung Joo Park, as de facto representative of the estate, of all assets owned, beneficially or out right by Que Te Park on the date of his death, as well as as of June 30, 2008, and to account for any disposition of assets between June 30, 2008, and his death. If the beneficial interest in foreign accounts was no longer owned by Que Te Park on June 30, 2008, the United States also is entitled to receive and requests an accounting for the disposition of those assets.

WHEREFORE, the United States requests that this Court:

(1) On Count I, enter judgment in favor of the United States and against John Doe, as Administrator the Estate of Que Te Park, and Jung Joo Park, as de facto representative of the estate of Que Te Park, in the amount of

$3,979,212.31, plus statutory additions and interest from November 18, 2016, for the unpaid 2008 FBAR penalty assessed against Que Te Park;

(2) On Count II, enter a judgment in favor of the United States and against Jung Joo Park as trustee of the Que Te Park Trust in the amount of $3,979,212.31 plus statutory additions and interest from November 18, 2016, for the unpaid 2008 FBAR penalty assessed against Que Te Park;

(3) On Count III, enter a judgment in favor of the United States and against Jung Joo Park individually for the unpaid 2008 FBAR penalty assessed against Que Te Park to the extent the Estate and the Trust are unable to satisfy the judgment on account of Jung Joo Park's activity in making distributions from the Trust;

(4) On Count IV, set aside Que Te Park's purported transfer of the property of the Trust to Jung Joo Park; set aside Jung Joo Park's subsequent transfers of property of the Trust to herself, Charles Park, James Park, and Nina Park, and pay the United States' claims out of the value of such set aside property;

(5) On Count V, enter a judgment in favor of the United States and against the defendants Jung Joo Park, Charles Park, James Park, and Nina Park, in the amount of the value of any assets received by them, either as a result of the death of Que Te Park or as a result of fraudulent conveyances by Que Te Park, up to the amount of $3,979,212.31 plus statutory additions and interest from November 18, 2016;

(6) On Count VI, enter a judgment in favor of the United States ordering an accounting by Jung Joo Park of Trust property received after June 30, 2008 or transferred at any time thereafter, as well as an accounting by Jung Joo Park of the assets owned by Que Te Park on June 30, 2008 and the disposition of beneficial and other interests owned by Que Te Park from June 30, 2008 to the date of his death, as well as an accounting for assets owned by Que Te Park on the date of his death.

(7) and award the United States its costs and such further relief as the Court deems just and proper.

        Respectfully submitted,

        CAROLINE D. CIRAOLO
        Principal Deputy Assistant Attorney General
        U.S. Department of Justice

        /s/ Mary A. Stallings
        _____

        W. DAMON DENNIS
        MARY A. STALLINGS
        Trial Attorneys, Tax Division
        U.S. Department of Justice
        P.O. Box 55, Ben Franklin Station
        Washington, D.C. 20044
        Telephone: (202) 616-1460
        Facsimile: (202) 514-5238
        E-mail: w.damon.dennis@usdoj.gov
                  mary.a.stallings@usdoj.gov