**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 16 C 10787** |
| v. | ) | |
| | ) | **Judge Jorge L. Alonso** |
| JUNG JOO PARK, CHARLES C. PARK, | ) | |
| JAMES PARK, NINA PARK, and | ) | |
| JOHN DOE, as representative of the estate | ) | |
| of Que Te Park, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, the United States of America, brings this action to collect a tax penalty assessed against Que Te Park, who is now deceased, from his surviving family members or estate. His children, defendants Charles C. Park, James Park, and Nina Park have moved to dismiss the claims against them. The motion to dismiss is granted, with leave to file an amended complaint by November 7, 2017.

### BACKGROUND

On June 10, 2010, Que Te Park ("Mr. Park"), then living in Inverness, Illinois, filed an amended Report of Foreign Bank and Financial Accounts ("FBAR") for the 2008 tax year, disclosing for the first time numerous foreign bank accounts in which he held (substantially) more than $10,000. Based on the amended report, the United States government assessed a tax penalty against Mr. Park of nearly $4 million. *See* 31 U.S.C. § 5314.

According to the allegations of the complaint, Mr. Park died on July 12, 2012. Subsequently, his wife, defendant Jung Joo Park ("Mrs. Park"), informed the Internal Revenue Service that Mr. Park's estate was not probated. The government alleges, however, "upon

information and belief," that Mr. Park held assets that included, but were not limited to, "Korean bank accounts," "Korean real property," and "certain other inheritance documents" (2d Am. Compl. ¶ 45, ECF No. 25), and that some or all of these assets were transferred to Mrs. Park and Mr. Park's children, defendants Charles Park, James Park, and Nina Park (hereinafter, "the Park children"), pursuant to South Korean probate proceedings. (*See id.* ¶¶ 46-48.)

In particular, the government alleges that Mr. Park had previously placed assets in a revocable trust named the Que Te Declaration of Trust ("the Trust"). He settled and notarized the Trust in DuPage County, Illinois, in January 2007. Mr. Park was both the grantor and the original trustee of the Trust. By its own terms, the Trust became irrevocable on Mr. Park's death. The Trust names Mrs. Park as the successor trustee; it also names the Park children as successor co-trustees, but only "[i]n the event [Mrs. Park] is unwilling and unable to act as Successor Trustee" at the time of Mr. Park's death or incapacity. (*Id.*, Ex. 1, Trust, Article Fifth, Section 8, ECF No. 25-1.) Upon Mr. Park's death, the terms of the Trust required the trustee to divide the Trust assets into two separate trusts. First, the trustee is required to set up a "Marital Trust" for the benefit of Mrs. Park. (*Id.* ¶ 28.) Mrs. Park is empowered, independently of her role as trustee, to distribute any part of the Marital Trust "principal" to any of Mr. Park's "descendants and their respective spouses" or to charity. Second, the trustee is to use the Trust's remaining assets to set up a "Family Trust" for the benefit of Mrs. Park during her lifetime, but, after her death, to be divided and distributed to Mr. Park's descendants. (*Id.* ¶ 29; *id.*, Ex. 1, Article Fourth).

The government's complaint consists of seven counts: Count I, to reduce the 2008 FBAR civil penalties to judgment; Count II, liability of the Trust for the 2008 FBAR penalties; Count III, for Illinois common-law transferee liability against Mrs. Park and the Park children; Count

IV, fiduciary liability against Mrs. Park as trustee of the Trust and *de facto* representative of Mr. Park's estate; Count V, to set aside fraudulent transfers of Trust assets to Mrs. Park and the Park children; Count VI, to set aside fraudulent transfers of other assets held by Mr. Park to Mrs. Park and the Park children; and Count VII, for an accounting of transfers of Trust assets and other assets owned by Mr. Park. The Park children move to dismiss the claims against them, which are alleged in Counts III, V, VI and VII.[1]

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (ellipsis omitted)).

Under federal notice-pleading standards, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] The government correctly states in its opposition brief that the Park children's motion to dismiss was not timely filed. However, the Park children explain in reply that counsel was confused about whether the government had filed the Second Amended Complaint in lieu of a brief in response to the Park children's then-pending motion to dismiss an earlier version of the complaint, with the expectation that the Second Amended Complaint mooted the pending motion to dismiss, or whether the government intended to proceed with briefing the issues raised in the pending motion to dismiss. Based on this confusion, the Court excuses the Park children's untimely motion.

misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Additionally, any claims of or including acts of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires the pleading party to "state with particularity the circumstances constituting fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016). Although fraudulent or deceptive intent "may be alleged generally," Rule 9(b) requires a plaintiff to describe the "circumstances" of the alleged fraudulent activity with "particularity" by including such information as the "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated," *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008), or, to put it differently, by providing the "who, what, where, when and how" of the alleged fraudulent conduct. *See Bank of Am., Nat'l Ass'n, v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

The Park children argue that Counts III, V, and VI fail to state a claim; the government's claims are barred by the statute of limitations; Illinois law does not govern the Trust; the fraud counts are not pleaded with particularity; and the government has not stated a claim for accounting.

Some of the Park children's arguments can be dispatched quickly. First, whether the statute of limitations bars a claim is an affirmative defense that the Court resolves on a motion to

dismiss only if it is clear on the face of the complaint that the plaintiff's claims are time-barred. In this case, it is not clear on the face of the government's complaint that its claims are time-barred; and in any case, as the government argues without reply from the Park children, "'[i]t is well settled that the United States is not bound by state statutes of limitation . . . in enforcing its rights'" in proceedings it institutes to collect taxes, even those involving state fraudulent transfer law. *United States v. Hoyt*, 524 F. Supp. 2d 638, 641 (D. Md. 2007) (quoting *United States v. Summerlin,* 310 U.S. 414, 416 (1940)). Second, the Park children argue that Illinois law does not govern the Trust because, by its own terms, the Trust is governed by the law of the jurisdiction where "the Trust property shall . . . have its situs for administration," (Trust, Article Ninth, ECF No. 25-1), and to the extent the complaint sheds any light on where Trust property has its "situs for administration," it appears to be in South Korea. This argument is not squarely, fully briefed by the parties, and in any case, it is not clear on the face of the pleadings where the Trust property is held, so the issue cannot be resolved on a motion to dismiss. These arguments for dismissing the Second Amended Complaint are unpersuasive.

That leaves the argument that the government has not met its pleading burden. In particular, the Park children argue that the heightened pleading standard of Rule 9(b) applies to the government's claims against them because they sound in fraud, and, according to the Park children, the government has not met its burden to state the "circumstances constituting fraud" with "particularity."

The government's claims under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/5, in Counts V and VI must be pleaded with particularity under Rule 9(b). *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079-80 (7th Cir. 1997). To

plead a "constructive fraud" or "fraud in law" claim under the IUFTA, as the government seeks

to do in this case, the government must plead the following elements:

> 1) an allegation of jurisdiction, 2) a statement of the date and the conditions under which [the transferor's obligation to the plaintiff arose], 3) a statement that the [transferor] owes the plaintiff the amount, 4) a description of the events surrounding the [transferor's] conveyance of all of his property to the transfer recipient for the purpose of defrauding and for delaying the collection of payment by the plaintiff, and 5) the plaintiff's demand of the court.

*Id.* Courts in this district have interpreted the fourth element to require the complaint to allege

"what (or how much) was transferred, when the transfer was made, how it was made, who made

it, who received it, and under what circumstances." *See In re Life Fund 5.1 LLC*, No. 09 B

32672, 2010 WL 2650024, at *3 (Bankr. N.D. Ill. June 30, 2010); *Handler v. Heidenry*, No. 11 C

4494, 2012 WL 2396615, at *5 (N.D. Ill. June 25, 2012) (quoting *In re Life Fund 5.1*); *True Line

Contracting & Remodeling Servs., Inc. v. Sheraton Peoria Hotel, LLC*, No. CV 15-1013, 2015

WL 5179561, at *3 (C.D. Ill. Sept. 4, 2015) (quoting *Handler*).   Other district courts have

similarly required plaintiffs purporting to assert claims of fraudulent transfers under other states'

versions of the Uniform Fraudulent Transfer Act or similar laws to make particularized

allegations of the circumstances of the allegedly fraudulent transfers. *See, e.g., Screen Capital

Int'l Corp. v. Library Asset Acquisition Co.*, 510 B.R. 248, 258-59 (C.D. Cal. 2014); *Heartland

Payment Sys., Inc. v. Hickory Mist Luxury Cabin Rentals, LLC*, No. 3:11-CV-350, 2011 WL

6122371, at *5 (E.D. Tenn. Dec. 8, 2011); *Kranz v. Koenig*, 240 F.R.D. 453, 456 (D. Minn.

2007); *cf. Skyline Potato Co. v. Tan-O-On Mktg., Inc.*, 879 F. Supp. 2d 1228, 1257-58 (D.N.M.

2012).   The government has not come close to describing with particularity the precise

circumstances of the alleged transfers in the way that these decisions have required.   The

complaint contains no particularized description of the events surrounding the conveyance of Mr.

Park's assets or the Trust to the Park children; in fact, it makes no particularized allegations of

any such conveyance or conveyances at all. Particularized facts concerning "what (or how much) was transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances," are largely missing; the government only pleads who received the alleged transfers (the Park children). The government has not met its pleading burden under Rule 9(b) on Counts V and VI.

The government argues that, Rule 9(b) notwithstanding, it has stated a valid claim for transferee liability in Count III under Illinois common law. (*See* Opp'n Br. at 5-6 (citing *Berliant v. C.I.R.*, 729 F.2d 496, 500 (7th Cir. 1984) ("'It is an established doctrine of equity that creditors . . . may pursue assets into the hands of distributees, where distribution has been made without discharging their debts.'") (quoting *Union Tr. Co. v. Shoemaker*, 101 N.E. 1050, 1053 (Ill. 1913)).) According to the government, that claim need not comply with Rule 9(b). Even if the government is correct in that regard, it still fails to meet its burden under the more liberal pleading standard of Rule 8 because it pleads no details of any particular transfers of assets from Mr. Park or the Trust to the Park children. Indeed, according to the complaint, the government appears to have no basis for alleging any such transfers ever occurred other than "information and belief." (2d Am. Compl. ¶¶ 46, 48.) Under such circumstances, the Court is "unable to infer any more than the possibility of misconduct." *Simonian v. Edgecraft Corp.*, No. 10 C 1263, 2010 WL 3781262, at *3 (N.D. Ill. Sept. 20, 2010) (citing *Iqbal*, 558 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.")); *see Screen Capital Int'l Corp.*, 510 B.R. at 259 ("Even under Rule 8, the [complaint] fails to properly allege what—if any—[property] rights . . . were transferred . . . to or for the benefit of [defendant], and thus what each [party] seeks to recover *from* [defendant]. Without properly alleging an underlying transfer,

[plaintiff] cannot bring a claim for avoidance and recovery of a constructively fraudulent transfer under Rule 8.").  Notably, by the terms of the Trust, it is Mrs. Park who is the primary trustee and beneficiary of the Trust during her lifetime, not the Park children.  There is no more than the possibility that assets of Mr. Park or the Trust were transferred to the Park children or that they exercised control over them.  In other words, the factual allegations do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the government provides nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice," *Iqbal*, 556 U.S. at 678, to state a claim that can survive a motion to dismiss.  For these reasons, the government fails to state a claim for common-law transferee liability against the Park children.

The government's claim for an accounting is similarly inadequate.  According to the allegations of the complaint and the arguments in the government's response brief, the accounting claim against the Park children is premised on the allegations that the Park children received property or assets of Mr. Park or the Trust.[2]  (*See* Opp'n Br. at 13-15, ECF No. 30 (citing 2d Am. Compl. ¶¶97-98).)  As explained above, even assuming that the more liberal *Twombly*/*Iqbal* plausibility standard of Rule 8 applies, these allegations are essentially speculative and do not meet the *Twombly*/*Iqbal* standard.

---

[2] The Court notes that the government has sued the Park children not only individually but also as "Successor Co-Trustees" of the Trust.  However, the government apparently does not base its accounting claim against the Park children on their status as such, nor could it, because "[i]f, under the terms of the trust instrument, the successor trustee does not become a trustee until after the death of a predecessor trustee, a court cannot hold him or her liable for an accounting until after the predecessor's death."  35 Ill. Law and Prac. Trs. § 125 (citing *Landau v. Landau*, 101 N.E.2d 103, 107 (Ill. 1951)).  Under the terms of the Trust, Mrs. Park was to succeed Mr. Park as trustee, and the Park children did not become "successor co-trustees" upon his death unless Mrs. Park was "unwilling and unable to act as Successor Trustee."  (*See* 2d Am. Compl., Ex. 1, Trust, Article Fifth, Section 8.)  The government apparently recognizes as much in its complaint, stating that the Park children are sued in their capacity as successor co-trustees only "in the event that Mrs. Park has resigned as trustee."  (*Id.* ¶¶ 9-11.)  But the government provides no grounds for any suspicion that she has done so or that, having done so, she has appointed the Park children as her successors (indeed, to the contrary, its claim for breach of fiduciary duty against the trustee of the Trust names only Mrs. Park as a defendant).

## CONCLUSION

For the reasons set forth above, the Court grants the Park children's motion to dismiss the claims against them [27]. The claims against the Park children should be dismissed without prejudice, with leave to file an amended complaint by November 7, 2017.

**SO ORDERED.**

**ENTERED: October 5, 2017**

**HON. JORGE L. ALONSO**
**United States District Judge**
